IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

REBECCA EUBANK,

      Plaintiff,

   v.                                    Civil Action No. 3:24-cv-354

CAMPING WORLD RV SALES, LLC
d/b/a AIRSTREAM OF VIRGINIA,

     and

FREEDOMROADS, LLC
d/b/a CAMPING WORLD,

      Defendants.

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendant FreedomRoads, LLC dba Camping World's ("FreedomRoads") Motion to Compel Arbitration and Dismiss or Stay Proceedings (the "Motion to Compel Arbitration" or "Motion").[1] (ECF No. 12.)[2] Plaintiff Rebecca Eubank responded in opposition and FreedomRoads replied. (ECF Nos. 15, 17.)

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will grant the Motion. (ECF No. 12.) The Court will compel arbitration and stay this action.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] The Court has dismissed Defendant Camping World RV Sales, LLC dba Airstream of Virginia ("Camping World") from this case without prejudice. (ECF No. 18.)

## I.  Factual and Procedural Background

In evaluating FreedomRoads' Motion to Compel Arbitration, "the Court may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties." *Chowdhury v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 3:21cv799 (DJN), 2022 WL 1105077, at \*1 (E.D. Va. Apr. 13, 2022) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) and *Berkely Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019)).

### A.    Factual Background

#### 1.    Ms. Eubank's Complaint

Ms. Eubank worked for FreedomRoads from September 22, 2021 until the termination of her employment on October 10, 2022.  (ECF No. 1 ¶ 7.)  Stemming from this termination, Ms. Eubank brings the following two counts against FreedomRoads:

| | |
|---|---|
| **Count I:** | Failure to Accommodate and/or Engage in the Interactive Process in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12101 et seq. (the "ADA"). |
| **Count II:** | Retaliation and Wrongful Discharge in Violation of the ADA. |

(ECF No. 1, at 4–8.)

#### 2.    The Arbitration Agreement

On September 22, 2021, her first day of employment with FreedomRoads, (ECF No. 1 ¶ 7), Ms. Eubank digitally acknowledged and signed an Arbitration Agreement (the "Agreement").  (*See* ECF No. 13-1 (copy of the Agreement); ECF No. 13-2, at 2 (Ms. Eubank's September 22, 2021 digital acknowledgment of Agreement); ECF No. 17-3, at 1–2 and ECF No. 17-5, at 1 (both documents indicating Ms. Eubank created digital employee account on

September 21, 2021 at 9:20 a.m.); ECF No. 17-4, at 1 (spreadsheet indicating Ms. Eubank

acknowledged the Agreement on September 22, 2021 at 10:09:24 a.m.); ECF No. 17-7 ¶¶ 2, 8

(Declaration of Michael Waddington, Director of Human Resources, stating that "[b]ased upon

the data within the ADP Onboarding system[,] [Ms. Eubank] accepted the Arbitration Agreement

on September 22, 2021 at 10:09:24 a.m.").)  FreedomRoads' Director of Human Resources, Mr.

Waddington, further declares that "acceptance of the Arbitration Agreement is a mandatory

condition of employment."  (ECF No. 17-7 ¶ 13.)  As such, FreedomRoads "would not have

employed [Ms. Eubank] without [her] acceptance of the Arbitration Agreement."  (ECF No. 17-7

¶ 13.)

The Agreement states that "[a]rbitration under this Agreement may be enforced under the

terms of the Federal Arbitration Act." (ECF No. 13-1 ¶ 6.)  The Agreement further provides "that

arbitration is a substitute for traditional litigation and [the Parties] hereby waive their respective

rights to file a private lawsuit and have that suit heard in court by a judge or jury." (ECF No. 13-

1 ¶ 3.)

Paragraph 2 of the Agreement explains that it covers "all claims or controversies, whether

or not arising out of employment or termination of employment, that would constitute a cause of

action in a court", including claims "based on . . . the Americans with Disabilities Act."  (ECF

No. 13-1 ¶ 2.)  The Agreement says that "any and all claims or disputes described in paragraph 2

that [the undersigned] Associate may have now or in the future with or against

FREEDOMROADS, LLC, Inc., any parent or subsidiary of, or any Company affiliated with

FREEDOMROADS, LLC, Inc. or any of its subsidiaries, and the officers, directors, managers,

Associates, or agents of any of them acting in their capacity . . . may be heard by a neutral

3

mediator." (ECF No. 13-1 ¶ 1.)  If that mediation "is unsuccessful, the claim or dispute shall be submitted to arbitration and heard and decided by a neutral arbitrator." (ECF No. 13-1 ¶ 1.)

The Agreement informs the reader that "[b]y entering your name below, you (a) accept the terms and conditions of the Arbitration Agreement, above; and (b) agree that your entering your name is your electronic signature and to use an electronic signature to demonstrate your acceptance of the Arbitration Agreement." (ECF No. 13-1, at 4.)  It further states:  "Your electronic signature is as legally binding as an ink signature." (ECF No. 13-1, at 4.)

### B.    Procedural Background

On May 15, 2024, Ms. Eubank filed her Complaint. (ECF No. 1.)  On July 3, 2024, FreedomRoads filed its Motion to Compel Arbitration. (ECF No. 12.)  Ms. Eubank responded in opposition and FreedomRoads replied. (ECF Nos. 15, 17.)

For the reasons articulated below, the Court will grant the motion. (ECF No. 12.)

## II.  Legal Standard

### A.    The Enforceability of an Arbitration Agreement

The Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements," and it "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Through the FAA, Congress sought "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them] upon the same footing as other contracts.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

4

To that end, the FAA provides that, in contracts involving interstate or foreign commerce, a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 1-2.  If one party to such a contract files suit, the opposing party may move to stay the proceedings and compel arbitration as provided in the parties' arbitration agreement. 9 U.S.C. §§ 3-4.  Courts follow a two-step inquiry to determine whether to compel arbitration in a dispute.  *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) (citation omitted).

First, the court must "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* (emphasis in original).  "The scope of arbitrable issues is 'to be decided by the court, not the arbitrator, [u]nless the parties clearly and unmistakably provide otherwise.'" *Speight v. Lyft, Inc.*, No. 3:20cv189 (HEH), 2021 WL 298192, at *3 (E.D. Va. Jan. 28, 2021) (brackets in original) (internal quotation marks omitted) (quoting *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1459 (4th Cir. 1992)).

"Second, if the court answers the first question in favor of itself, then the court must decide whether the dispute is arbitrable." *Chowdhury*, 2022 WL 1105077, at *3 (citation omitted).  "Under this prong, the party opposing arbitration bears the burden of showing that the court should not compel arbitration." *Id.* (citing *Speight*, 2021 WL 298192, at *4).  Federal courts "apply ordinary state law principles that govern the formation of contracts . . . and the federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (internal quotation marks and citations omitted).  "If the court concludes that the parties agreed to arbitrate the particular dispute, then the FAA leaves courts no discretion, 'but instead mandates that district courts *shall* direct the

5

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"

*Chowdhury*, 2022 WL 1105077, at \*3 (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Motions to compel arbitration are evaluated similarly to motions for summary judgment. *Denver Glob. Prods. v. Leon*, 815 F. App'x 714, 719 n.6 (4th Cir. 2020); *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). When an arbitration agreement contains provisions that encompass the relevant claims, the burden shifts to the party opposing arbitration to "make an unequivocal denial that an arbitration agreement exists" and to "show sufficient facts in support." *Chorley Enters.*, 807 F.3d at 564 (citations omitted).

A party's "failure to remember signing [an] Arbitration Agreement does not create a material dispute sufficient to defeat arbitration." *Cullen v. Hall Auto., LLC*, No. 2:21-cv-00047 (DEM), 2022 WL 1561227, at \*6 (E.D. Va. Jan. 7, 2022), *report and recommendation adopted*, No. 2:21cv47 (ALWA), 2022 WL 1262549 (E.D. Va. Apr. 28, 2022). Nor can an Arbitration Agreement "'be defeated by one party's assertion that it did not know the precise identity of the party with whom it contracted.'" *Cullen*, 2022 WL 1561227, at \*7, 9 (quoting *Habitat Architectural Grp., P.A. v. Cap. Lodging Corp.*, 28 F. App'x 242, 245 (4th Cir. 2002)) (Arbitration Agreement enforceable against plaintiff where it "plainly indicate[d] that the other party was [plaintiff's] employer" and plaintiff "knew she was signing the Arbitration Agreement as a condition of her employment."). "In fact, very few corporations would be able to enforce their contracts if signatories needed to fully comprehend their corporate structure. And [A]rbitration [A]greements, even more than ordinary contracts, should be 'rigorously enforce[d.]'" *Id.* at \*9 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

## B.    Dismissing or Staying a Suit Governed by the FAA

Section 3 of the FAA requires courts to stay actions "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [an arbitration agreement]." 9 U.S.C. § 3.  However, the United States Court of Appeals for the Fourth Circuit has stated that district courts may dismiss an action "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Fourth Circuit has acknowledged that its *Choice Hotels* decision conflicts with Section 3 of the FAA and its previous holding that the FAA requires a stay when a federal court compels arbitration pursuant to a valid agreement, but nonetheless has declined to resolve the dispute. *Noohi v. Toll Bros.*, 708 F.3d 599, 605 n.2 (4th Cir. 2013).  In response, courts in this District often, but not always, dismiss cases after compelling arbitration. *See, e.g.*, *Clarke v. Guest Servs., Inc.*, No. 3:21-cv-524 (HEH), 2022 WL 567836, at *1 (E.D. Va. Feb. 24, 2022) ("Whether to stay or dismiss a fully arbitrable lawsuit is within the discretion of the district court.") (citation omitted); *Chowdhury*, 2022 WL 1105077, at *5 (dismissing case where court compelled arbitration as to the remainder of plaintiff's claims); *Hoover v. StoneMor Partners, LP*, No. 3:19cv751 (MHL), 2019 WL 13251313, at *2 (E.D. Va. Dec. 30, 2019) (compelling arbitration and staying action "given the imminent statute of limitations for [plaintiff's] defamation claim.").

### III.  Analysis

For the reasons articulated below, Ms. Eubank's ADA claims against FreedomRoads are plainly governed by the executed Arbitration Agreement.  As such, the Court must compel arbitration, and will exercise its discretion to stay this case.  Furthermore, the Court will deny

7

FreedomRoads' request that Ms. Eubank pay the attorney's fees and costs associated with the Motion.

> **A.     The Arbitration Agreement Mandates Arbitration of Ms. Eubank's Claims**

As articulated above, motions to compel arbitration are evaluated similarly to motions for summary judgment. *Denver Glob. Prods.*, 815 F. App'x at 719 n.6; *Chorley Enters., Inc.*, 807 F.3d at 564.  When an arbitration agreement contains provisions that encompass the relevant claims, the burden shifts to the party opposing arbitration to "make an unequivocal denial that an arbitration agreement exists" and to "show sufficient facts in support." *Chorley Enters.*, 807 F.3d at 564 (citation omitted).

On September 22, 2021, her first day of employment with FreedomRoads, (ECF No. 1 ¶ 7),  Ms. Eubank digitally acknowledged and signed an Arbitration Agreement (the "Agreement").  (*See* ECF No. 13-1 (copy of the Agreement); ECF No. 13-2, at 2 (Ms. Eubank's September 22, 2021 digital acknowledgment of Agreement); ECF No. 17-3, at 1–2 and ECF No. 17-5, at 1 (both documents indicating Ms. Eubank created digital employee account on September 21, 2021 at 9:20 a.m.); ECF No. 17-4, at 1 (spreadsheet indicating Ms. Eubank acknowledged the Agreement on September 22, 2021 at 10:09:24 a.m.); ECF No. 17-7 ¶¶ 2, 8 (Declaration of Michael Waddington, Director of Human Resources, stating that "[b]ased upon the data within the ADP Onboarding system[,] [Ms. Eubank] accepted the Arbitration Agreement on September 22, 2021 at 10:09:24 a.m.").)  FreedomRoads' Director of Human Resources, Mr. Waddington, further declares that "acceptance of the Arbitration Agreement is a mandatory condition of employment."  (ECF No. 17-7 ¶ 13.)  As such, FreedomRoads "would not have employed [Ms. Eubank] without [her] acceptance of the Arbitration Agreement."  (ECF No. 17-7 ¶ 13.)  On this record, FreedomRoads has provided sufficient evidence that Ms. Eubank signed

the Agreement on the first day of her employment, September 21, 2021. (*See* ECF No. 1 ¶ 7; ECF No. 13-1; ECF No. 13-2, at 2; ECF No. 17-3, at 2; ECF No. 17-5, at 1; ECF No. 17-4, at 1; ECF No. 17-7 ¶¶ 2, 8.) Furthermore, the Arbitration Agreement unequivocally provides that Ms. Eubank's two claims brought under the ADA must be heard by a neutral mediator and, if that mediation is unsuccessful, then by a neutral arbitrator. (ECF No. 1, at 4–8; ECF No. 13-1 ¶¶ 1–2.)

In her Opposition, Ms. Eubank presents two arguments regarding why the Court should not enforce the Arbitration Agreement. First, she asserts that no signed Agreement exists, and states that she "has no recollection of signing" the Agreement. (ECF No. 15, at 1, 2 n.1.) A party's "failure to remember signing [an] Arbitration Agreement", however, "does not create a material dispute sufficient to defeat arbitration." *Cullen*, 2022 WL 1561227, at *6. As discussed immediately above, FreedomRoads' exhibits support the reasonable inference that the Agreement exists, and that Ms. Eubank signed it on September 21, 2021. (*See* ECF No. 13-2, at 2 (Ms. Eubank's September 22, 2021 digital acknowledgment of Agreement).) As such, her first argument fails.

Second, Ms. Eubank writes that "from a strictly technical perspective [the Arbitration Agreement] lists the incorrect entity name." (ECF No. 15, at 2.) She notes that "[i]n the Arbitration Agreement section, it is repeatedly listed as FreedomRoads, LLC, Inc.", but "the opening paragraph indicates it is a contract between the undersigned associate and the *subsidiary* of Freedom Roads, LLC Inc." (ECF No. 15, at 2 (emphasis added).)

Ms. Eubank's second argument also founders. The Arbitration Agreement's language "plainly indicates that the other party was [Ms. Eubank's] employer", and Ms. Eubank "knew she was signing the Arbitration Agreement as a condition of her employment." *Cullen*, 2022

9

WL 1561227, at *7, 9. "The Arbitration Agreement contains terms explicitly geared toward employment." *Id.* at *7. Paragraph 2 of the Agreement provides that it covers "all claims or controversies, whether or not arising out of employment or termination of employment, that would constitute a cause of action in a court", including claims "based on . . . the Americans with Disabilities Act." (ECF No. 13-1 ¶ 2.) "Any reasonable person would understand that this language, which is contained within the four corners of the Arbitration Agreement, refers to a specific employment relationship." *Cullen*, 2022 WL 1561227, at *7. As a result, Ms. Eubank must arbitrate her claims against her former employer, FreedomRoads.

### B.    The Court Will Stay This Action

Having concluded that it must compel arbitration, the Court has discretion to either dismiss or stay this action. *Hoover*, 2019 WL 13251313, at *2. FreedomRoads states that the "[t]he Court should dismiss the case or, alternatively, stay the case pending arbitration." (ECF No. 13, at 9.) Ms. Eubank asks that if the Court grants the Motion to Compel Arbitration, that the Court also stay this action "to effectuate the tolling of the claims." (ECF No. 15, at 3.) With Ms. Eubank's concerns regarding tolling in mind, the Court finds it in the interests of justice to stay the action pending arbitration. The Court will not, however, countenance any undue delay by Ms. Eubank in submitting her claims to arbitration. Accordingly, Ms. Eubank must file a Status Report *every* sixty days from the date of this Memorandum Opinion apprising this Court of the status of arbitration. Ms. Eubank's failure to timely file the Status Report or promptly pursue her arbitration claims may result in dismissal of this case in its entirety.

### C.    The Court Will Not Impose Sanctions at This Time

FreedomRoads writes in support of its Motion that on June 6, 2024, the Parties' counsel exchanged emails regarding the Arbitration Agreement. (ECF No. 13, at 4.) On June 9, 2024,

FreedomRoads forwarded ECF No. 13-2 to Ms. Eubank's counsel at his request.  (ECF No. 13, at 4.)  In response, Ms. Eubank's counsel wrote that he was "'not being able to secure consent.'" (ECF No. 13, at 4.)  From this response, FreedomRoads' counsel was unable to conclude if Ms. Eubank "said no or ha[d] not responded to her counsel." (ECF No. 13, at 4.)  Based on these facts, FreedomRoads "seeks its attorney's fees and costs for having to file this [Motion] due to the refusal of [Ms. Eubank] to act in good faith and acknowledge the clear agreement signed by her." (ECF No. 13, at 4.)

Ms. Eubank represents to this Court through her counsel that she does not recall signing the Agreement.  (ECF No. 15, at 2 n.1.)  Although FreedomRoads attaches a number of exhibits to its filings that, when considered together, support the reasonable inference that Ms. Eubank did in fact sign the Agreement on September 22, 2021, (*see* ECF No. 13-1; ECF No. 13-2, at 2; ECF No. 17-3, at 2; ECF No. 17-5, at 1; ECF No. 17-4, at 1; ECF No. 17-7 ¶¶ 2, 8), the Court also takes Ms. Eubank at her word that, as of her July 2024 Opposition, she did not remember signing the September 2021 Agreement.

Moreover, FreedomRoads only provided Ms. Eubank with ECF No. 13-2 before filing the Motion.  (ECF No. 13, at 4.)  Although ECF No. 13-2 lists an "Acknowledge Date" for the Arbitration Agreement of September 22, 2021, (ECF No. 13-2, at 2), it may have been insufficient to jog Ms. Eubank's memory.  Moreover, the majority of exhibits that support an inference that Ms. Eubank signed the Arbitration Agreement are attached to FreedomRoads' Reply.  On this record, the Court will not impose the drastic measure of requiring Ms. Eubank to pay FreedomRoads' attorney's fees and costs associated with this Motion.

11

## IV.  Conclusion

For the reasons articulated above, the Court will grant FreedomRoads' Motion to Compel

Arbitration.  (ECF No. 12.)

An appropriate Order shall issue.

Date: 1/22/25
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge